Richard D. **MEEHAN**, Appellant,

v.

**John W. MACY, Jr., Chairman, et al., Civil Service Commission et al.,**
Appellees.

No. 20812.

United States Court of Appeals
District of Columbia Circuit.

Aug. 23, 1968.

On Petition for Reconsideration

Mr. Edward L. Merrigan, Washington, D. C., for appellant.

Mr. Joel M. Finkelstein, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Mrs. Ellen Lee Park, Asst. U. S. Attys., were on the brief, for appellees. Mr. Scott R. Schoenfeld, Asst. U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

On April 18, 1968, we reversed the decision of the District Court which had granted summary judgment to appellee in an action brought by appellant, a former employee of the Canal Zone, seeking remedy for his allegedly unlawful discharge from the service.[1] We held that the Government personnel actions, both at the employing agency stage and on review in the Civil Service Commission, could not be sustained since two of the three grounds for which appellant was discharged were impermissible reasons for adverse action under the Veterans' Preference Statute.[2] With the third count standing in isolation, we were unable to conclude that the agency had not relied on impermissible bases for its action, and we remanded to the District Court with instructions that the appropriate agencies be allowed to reconsider the decision to discharge appellant.[3]

Subsequent to our decision, on June 3, 1968, the Supreme Court decided the case of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In a petition for rehearing, appellant contends that the doctrine of *Pickering* is applicable to the circumstances in this case and that it requires that our previous decision, upholding the legality of one of the grounds of discharge, be reversed. Although petitioner will not be given the relief he seeks, his petition for rehearing is granted and relief granted to the extent of ordering

1. Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968).

2. 392 F.2d at 836–839.

3. 392 F.2d at 839.

that the proceedings to be conducted on remand of his case be enlarged so that the issue of the implication of *Pickering* for appellant's case will be considered by the District Court and the Civil Service Commission.

We think it appropriate to state the reasons why we do not forthwith grant the relief requested by appellant and why we think the implication of *Pickering* for appellant's case is a subject not free from difficulty and warrants further consideration on remand. We begin with the proposition, set forth in our *Meehan* opinion, that in view of the interests of the sovereign as employer, a Government employee does not necessarily have the same freedom of speech, without fear of discipline, that under the doctrine of *New York Times* belongs to a private person without fear of a defamation action.[4] *Pickering* does not require repudiation of this statement.[5]

*Pickering* sets forth "general lines" for "analysis of the controlling interests." It holds that in the circumstances presented, involving a teacher's off-duty utterances on how a school system should allocate its resources, the employee is free of the fear of retaliatory dismissal for exercise of his right to speak at least to the extent that his remarks come within the zone of immunity created by the doctrine of New York Times v. Sullivan.[6]

The Court's analysis of controlling interests brought out, however, certain aspects of Pickering's case which may distinguish it from Meehan's. The Court relied on the rule that public officials may comment on public matters even though their criticisms are directed at "nominal superiors."[7] The Court noted, however, that some positions of public employment might involve special interests of confidentiality, loyalty, or maintenance of harmonious working relationships. Thus the Court stated:

"It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal. Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also be imagined. We intimate no views as to how we would resolve any specific instances of such situations,

4. "On the other hand we do not agree with appellant that an employee may, without fear of discipline, say anything and anywhere whatever a private person may say without fear of a libel action, under the doctrine of New York Times v. Sullivan [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)]. The added interests of the sovereign as employer are factors to be considered in adjusting and balancing constitutional concerns." 392 F.2d at 833.

5. "At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the effi-

ciency of the public services it performs through its employees." (391 U.S. p. 568, 88 S.Ct. p. 1734) * * * "We have already noted our disinclination to make an across-the-board equation of dismissal from public employment for remarks critical of superiors with awarding damages in a libel suit by a public official for similar criticism." (391 U.S. p. 574, 88 S.Ct. p. 1737)

6. 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To the progeny of *New York Times* cited in Meehan v. Macy, 392 F.2d at 831–832, n. 24, should be added St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

7. 391 U.S. p. 574, 88 S.Ct. p. 1737. The rule appears in Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Wood v. Georgia, 370 U.S. 375, 393–394, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

but merely note that significantly different considerations would be involved in such cases." [8]

Considerations very like the interests put to one side as inapplicable to *Pickering's* facts [9] were the core of the analysis of our *Meehan* opinion of April 18, affirming the legality of one of the grounds of discharge. Our opinion also recognized that there was a public interest in access to the views of policeman Meehan,[10] a point that was a keystone in the *Pickering* opinion.

We were confronted with a set of special circumstances, both a place, the Canal Zone, and a time, that were tense, and with a situation fraught with significant diplomatic overtones—circumstances which led the Governor to arrange a special conference and request confidential treatment for the plan he disclosed in advance. This was a context that established a special relationship between Meehan and the Governor. It is, indeed, worthy of note that Meehan's contention, that only American nationals should be eligible to serve as policemen, rested on the special considerations of security and need for loyalty applicable to employees in the police force of the Zone.

It was in this context that we said, concerning what we noted was a defamatory lampoon of the Governor and his policies:

"This invective by a policeman, charged under the circumstances with special responsibility and requirements of discipline, against the official ranking as chief of the force, is such a flouting of elemental loyalty to his employer and their common enterprise as to provide cause for discharge, except as the employee's acts may be necessary to preserve his own protected rights." [11]

It is fair to say, then, that our opinion rests essentially on considerations put to one side in *Pickering*. It is likewise fair to say, however, that we did not set forth a basic point of departure, to cover the general case of government employees, in terms of the standard later enunciated in *Pickering*. Thus we referred to the *New York Times* doctrine as having full application to government employees making criticisms of superiors through channels.[12] We did not state that it also had application, in general, for government employees making appeals to the public. We said nothing to the contrary, it is true, yet we cannot blink at the significance of a difference in articulated approach. Often the disposition of a matter turns essentially on which aspect of a complex doctrine is considered to be the rule, and which the exception.

A question arises as to the appropriate course. Our April 18 decision left open primarily a matter of agency discretion—whether the penalty of discharge was appropriate where only one of the three alleged reasons for discharge could be sustained. We think it in the interest of justice to continue the order of remand, though with a change in the nature of remand to reflect the change in posture due to *Pickering*. To the extent that a

8. 391 U.S. n. 3, p. 570, 88 S.Ct. p. 1735.

9. See also 391 U.S. p. 569, 88 S.Ct. p. 1735.
"The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning."

10. 392 F.2d at 837, and *see* n. 40.

11. 392 F.2d at 833–834.

12. This was the holding in Swaaley v. United States, 376 F.2d 857 (Ct.Cl. 1967).

**472**

controversy remains, we think it appropriate for the Civil Service Commission, as the key agency concerned with evolution of standards for employees of the federal government, to give consideration in the first instance to the principles announced by the Supreme Court in *Pickering* and by this court and their sound application to a case like Meehan's. Remand to the Civil Service Commission would permit introduction of additional evidence and argument on points that have a significance under *Pickering* that was previously only dimly discerned. Remand to the Commission would also permit an administrative disposition to settle this case, in effect, with the Commission making such arrangements as may be appropriate for further consideration and action by the Canal Zone Government.

The case is remanded to the District Court for further proceedings in accordance with this opinion, including the framing of an order retaining jurisdiction of the complaint and staying proceedings pending further consideration by the Civil Service Commission.[13]

So ordered.

TAMM, Circuit Judge (dissenting):

My position remains as I stated it as part of the original opinion issued by the court on April 18, 1968. Despite the revision of this opinion effectuated by the court's order of May 22 and the present proposed opinion, I believe that the record adequately and completely supports the District Court's findings, and as I have previously stated, I would therefore affirm the District Court.

---

13. Meehan is now a resident of the District of Columbia and raises the point that he would face hardship if required to return to the Canal Zone for further proceedings. This is a legitimate concern that must be taken into account in the interest of justice. This court's order of remand contemplates further proceedings that are in the interest of justice—both in the District Court and at the administrative level. The nature of further proceedings at the administrative level must stay within the ambit of what is permitted by the District Court, which will retain jurisdiction over the complaint and merely stay court proceedings pending further administrative consideration.