Richard D. MEEHAN, Appellant,

v.

John W. MACY, Jr., Chairman, et al., Civil Service Commission, et al., Appellees.

No. 20812.

United States Court of Appeals District of Columbia Circuit.

Reargued Dec. 16, 1968.

Decided May 12, 1969.

Mr. Edward L. Merrigan, Washington, D. C., for appellant.

Mr. Norman Knopf, Attorney, Department of Justice, with whom Asst. Atty. Gen., Edwin L. Weisl, Jr. (at the time the brief was filed), Messrs. David G. Bress, U. S. Atty., and John C. Eldridge, Attorney, Department of Justice, were on the brief, for appellees. Messrs. Frank Q. Nebeker, Scott R. Schoenfeld, Joel M. Finkelstein and Mrs. Ellen Lee Park, Asst. U. S. Attys., also entered appearances for appellees.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and DANAHER,[*] BURGER, WRIGHT, McGOWAN, TAMM, LEVENTHAL and ROBINSON, Circuit Judges, sitting *en banc.*

PER CURIAM:

On April 18, 1968, a division of this court concluded that the agency which held the hearing on appellant's proposed discharge was warranted in finding that Charge 1 (conduct unbecoming a police officer) was sustained, but that the record did not contain adequate support for discharge on Charge 2 (failure to obey instructions) or Charge 3 (failure to obtain clearance for publication).[1]

The division remanded to the District Court so as to permit agency reconsideration, in view of this court's ruling, of the sanction to be imposed on appellant.

On August 23, 1968, after the Supreme Court decided Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the same division of this court altered its order of remand so as to provide for reconsideration of appellant's case, on the merits, in light of the *Pickering* decision, and provision was specifically made for opportunity on remand for the introduction of further evidence.

■■ Appellant had filed a petition for rehearing *en banc* to request reconsideration of the division's opinion in the light of *Pickering*. This court's granting rehearing *en banc*, and its order, had the effect of vacating the opinions and orders of the division. After hearing argument *en banc*, this court is of the view that the result reached in the division's orders was an appropriate disposition; it accordingly reinstates those orders to the extent that: (1) Charges 2 and 3 are dismissed; (2) Charge 1 is to be reconsidered in light of *Pickering*; and (3) if Charge 1, so reconsidered, is still found to be validly charged and proved, the penalty assessed is to be reconsidered in view of Charges 2 and 3 being dismissed.

Since proceedings on remand may result in additional evidence of record, and a different order entered by the executive authority, we see no occasion for a decision on the present record as to the implications of *Pickering* for Meehan.

The Commission may consider this an appropriate time to reconsider its precedents in view of *Pickering* and to establish general guidelines insofar as that may be feasible.

So ordered.

---

[*] Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968).

DANAHER, Circuit Judge (dissenting):

I disagree respecting the action reflected in the majority's Per Curiam [1] following our rehearing *en banc*.

To begin with, and as to the first charge, I had found myself in accord with the rationale as presented and the conclusion reached in the opinion [2] released on April 18, 1968. It seemed clear beyond peradventure that the appellant was properly to be found amenable on the ground of conduct unbecoming a police officer and that his proposed discharge was not unlawful. That much established, unanimously, the court, in my view, need have gone no farther. Affirmance was in order.

Then came the appellant's Petition for Reconsideration which resulted in the opinion [3] of August 23, 1968, continuing but broadening the first order of remand, assertedly to take account of Pickering v. Board of Education [4] but permitting the introduction of additional evidence and inviting "an administrative disposition to settle this case."

Our *en banc* consideration has culminated in the reinstatement of the August 23, 1968 order, which had included a precatory exhortation for the Commission

> to reconsider its precedents in view of *Pickering* and to establish general guidelines insofar as that may be feasible.

Now the majority directs that (1) charges 2 and 3 be dismissed; (2) charge 1 be reconsidered in light of *Pickering;* and (3) if charge 1 upon reconsideration "is still found to be validly charged and proved," the penalty is to be reconsidered in view of the dismissal of charges 2 and 3.

## I

My reading of *Pickering* leads me to conclude. that the Court's decision there does not call for the action taken by the majority, and rather, upon the basis of its opinion, the legality of the proposed discharge of Meehan should be upheld in accordance with the unanimous views of the sitting division as set out in the first opinion.[5]

Let it be noted at once that at all times, this appellant was free to vent his opposition to the Governor's policy through "regular channels, including appeals to Congress." He and others comparably situated were not under prohibition to refrain from adverse criticism. There was no purportedly official edict suppressing their speech. Rather the appellant's brief [6] tells us that the four union officials present had been urged

> to avoid local issuance of comments or statements which could be used by the Panamanian press to inflame further the current difficulties between the United States and Panama.

Again, and respecting the same meeting, the record shows [7] that the Lieutenant Governor requested of those present

> that all possible care be taken to *present any opposition to the employment plan through regular channels including protests or appeals* to Congress. (Emphasis added.)

---

1. 138 U.S.App.D.C. —, 425 F.2d 472 (1969).

2. Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822. I would then have joined Judge Tamm in his dissent respecting the second and third charges, and I would have aligned myself with him in opposing a remand.

3. The appellant had then claimed that *Pickering, infra* note 4, required reversal of the court's upholding the legality of the discharge on the first ground, above noted.

4. 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

5. *Supra* note 2, wherein had been discussed, to the extent deemed necessary, the background and the facts as found by the agency.

6. Referring to the Personnel Director's memorandum of February 15, 1964. (J.A. 72–73)

7. *Id.*

The appellant had been called to the meeting with the Personnel Director and the Lieutenant Governor

in his capacity as President of the Police Lodge, American Federation of Government Employees.

It is completely obvious that the Governor had caused to be taken into the confidence of the Administration, men he assumed he could trust, representatives of unions of employees whose support he hoped to enlist.

The Governor "had decided to make a concession to Panama by employing 40 citizens of Panama as police officers on the Panama Canal Zone Police Force," the appellant tells us on brief.[8]

The appellant's bitter opposition to that plan led to his utterances, his "Dear Friends" letter and the poem, "a contemptuous and derogatory lampoon of the Governor and his policies," as the original opinion described it. The appellant's conduct "was a legitimate basis for discharge to promote the efficiency of the service."[9]

Meehan's conduct must appear the more flagrant, quite apart from his betrayal of the confidence reposed in him, because he well knew of the violent disorders which had broken out[10] in the Zone in January, 1964. He told us on brief that wild mobs had attacked in the Zone which had become a battleground; five persons had been killed, hundreds were wounded. Property valued at more than $1,500,000 had been destroyed, and thousands of Panamanian rioters had entered the conflict. United States Army units were called in to quell the disturbance.

Against background of that nature, Major General Fleming as Governor had proposed the step by way of concession to Panama against which this appellant knowingly had undertaken a contrary course, which in totality constituted conduct unbecoming an officer, contrary to his basic responsibility.

Our unanimous division in its first opinion concluded—properly, I submit—as follows:

We cannot upset the administrative determination that this responsibility was violated. * * * [His motive] does not justify his failure to comply with his obligation as an employee of the executive branch, an obligation intensified rather than diluted by the tense and sensitive situation of the time and place.

The District Court's judgment should be affirmed, forthwith and without more.

## II

Do any of my colleagues really believe that the situation thus described and the conclusions reached will come within Pickering v. Board of Education?[11]

Pickering, a school teacher, in advance of public voting as to the needs for additional school funds, had written for publication a letter critical of the Board's allocation of funds between educational and athletic programs. What Pickering said in no way could be presumed to have impeded his own performance of his duties as a teacher, or to have interfered with the operation of the schools, the Court observed. There was no question of the fitness of Pickering as a teacher.

His statements were in no way directed toward any person with whom Pickering normally as a teacher would be in contact. There was no question, the Court said, of maintaining discipline by Pickering's superiors or of continuing

---

8. Of course Congress—and the Departments of State and Defense—were in position to take whatever action might be deemed appropriate to countermand any such plan. It may be assumed, in view of the unique status of the American administration of the Canal Zone, that the Major General Commandant, the "Governor," had "cleared" his program with his superiors.

9. Meehan v. Macy, *supra* note 2, 129 U.S. App.D.C. at 228, 392 F.2d at 833.

10. Diplomatic relations between the United States and Panama then were severed and were not resumed until April, 1964.

11. *Supra* note 4.

harmony among his co-workers. Neither personal loyalty nor confidence had been impaired.

The contrast in fact and in effect between Pickering's case and Meehan's is so marked that every facet of the result and the reasons for it as seen by the Court in *Pickering*, condemn the course followed by Meehan. No wonder the Court said the exercise by a *teacher*[12] of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment. But that is not this case—or anything like it.

The Court explicitly observed an unwillingness to lay down a general standard, because of the enormous variety of fact situations which made it neither appropriate nor feasible to do so. I have no sort of doubt that the *Meehan* issue illustrates the prescience of the court's reluctance to prescribe the general standard, so disclaimed.

It may thus be suggested to my colleagues that this police officer *because* he was president of his union, had been permitted to share a confidence which for his own purposes he chose to violate; that he did so knowingly, and fully aware of the critical situation in which the Governor acted; that the latter in execution of the responsibilities devolving upon him, had turned for support and understanding to those of his subordinates upon whom he thought he could rely. Instead of the loyalty which he sought and reasonably could have expected to receive, the Governor found his position undermined, with himself and his government's policy held up to contumely and scorn in the very sensitive area in which the utmost of concern and caution had seemed to be required. And Meehan was responsible.

Pickering v. Board of Education requires no remand here. On the contrary, the circumstances shown, the facts found, and the record exhibited combine to call for affirmance of the agency action as impeccable as a matter of law.

I am authorized to say that Circuit Judges BURGER and TAMM join in this dissent.

TAMM, Circuit Judge (dissenting).

While I concur in Judge Danaher's opinion I am setting out some additional considerations which I feel require some emphasis. The factual background of this case has been detailed at length in the original panel opinion issued April 18, 1968 (129 U.S. App.D.C. 217, 392 F.2d 822 (1968)). Its procedural history since that time is set out in today's majority opinion. For the reasons hereinafter stated I adhere to my view in the original panel opinion that appellant's dismissal was proper.

I

At the outset of my discussion I feel that a threshold factor should be stressed. We must not lose sight of the fact that our scope of review is restricted by the relevant authority to a consideration *only* of whether the administrative agency's findings have a "rational basis" and that they are not arbitrary or capricious. Eustace v. Day, 114 U.S. App.D.C. 242, 314 F.2d 247 (1962); McTiernan v. Gronouski, 337 F.2d 31, 34 (2d Cir. 1964). As we said in Studemeyer v. Macy, 116 U.S.App.D.C. 120, 121, 321 F.2d 386, 387, cert. denied, 375 U.S. 934, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963):

There may be ground for reasonable differences of opinion as to whether the cause for which the personnel action was taken was grave enough to warrant depriving appellant of his position, but the court is not warrant-

---

12. The Court staked out a caveat in its note 3, 391 U.S. at 570, 88 S.Ct. 1731, 20 L.Ed.2d 811, exempting from the impact of its holding certain situations involving confidentiality, relationships which might impair the effectiveness of harmonious cooperation between subordinate and superior, and such. Assuredly, Meehan's status comes within the ambit of the Court's concern, decision respecting which was expressly exempted from the *Pickering* holding.

ed in substituting a different judgment of its own for that of appellant's superiors, whose action has been sustained by the Civil Service Commission and the District Court.

The majority, although recognizing the existence and propriety of this standard of review,[1] did not apply it in reaching the result that they did.

With the above-stated standard of review in mind, I must reiterate my prior position that if we find that appellant was validly discharged under charge one we must find also that the record supports his discharge under either charge two or three. To differentiate between the three charges based upon speculative considerations, as the majority does, merely serves to obfuscate the issue we are asked to decide. Thus the question, as I see it, is whether the Commission validly discharged appellant because of his conduct.

## II

I address myself now to what I consider the crux of the case. After first determining that appellant was validly discharged for conduct unbecoming a police officer, the majority (now joined by a majority of this court sitting *en banc*) holds today that this case must be remanded for further proceedings (including the introduction of additional evidence) in light of Pickering v. Board of Education.[2] Briefly, *Pickering* involved an Illinois school teacher who was dismissed from his position in Township High School District 205, Will County, Illinois for writing a letter to the local newspaper criticizing the Board of Education's handling of certain tax proposals.[3] The Supreme Court held that his dismissal was violative of his First Amendment right to freedom of speech. More specifically, Pickering's letter was

written basically to protest the spending of money on athletic programs rather than for more educational purposes. It was printed on September 24, 1964, in the tranquil setting of Will County, Illinois, which at that time was neither in the midst of violent uproar nor contemplating severing its relations with its sister states. This then constituted the placid background upon which Pickering's article was launched.

Juxtaposing the aforementioned background with the setting in which Meehan's conduct took place, we find that on January 9, 1964, approximately two hundred Panamanian students asked permission to lower the United States flag so that it could be subsequently raised simultaneously with the Panamanian flag. Upon refusal of their request rioting erupted. There were five known deaths, hundreds of people injured, and over $1,500,000 of property damage. The Canal Zone was put under military control until January 16, 1964, and diplomatic relations between the United States and Panama were severed. In light of and because of this tense situation, a meeting was held on February 4, 1964, for the purpose of informing various unions of Government employees, that, in an attempt to ameliorate the situation, the Governor of the Canal Zone intended to add twenty Panamanians to the Canal Zone police force.[4] Meehan, as president of one of the unions, was asked to attend. At the meeting all persons were told to confine any objections to the plan to "regular channels" and "not to issue comments which could be used by the local press to inflame further the strained relationship between the United States and Panama." On February 7, 1964, after agreeing to meet with the press, Meehan expressed his views which ap-

1. Meehan v. Macy, 129 U.S.App.D.C. 217, 225 n. 20, 392 F.2d 822, 830 n. 20 (1968).

2. 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

3. The temperate nature of this letter as compared to appellant's actions is dem-

onstrated clearly in the appendix to the Court's opinion in *Pickering*, 391 U.S. at 575–578, 88 S.Ct. 1731, 20 L.Ed.2d 811.

4. The Canal Zone police force had prior to this time consisted solely of United States citizens (J.A. 4).

peared in the local press that same day. That article stated in part (J.A. 22):

> Panamanians' loyalty in carrying out these tasks can be questioned. * * *

In addition, he had printed 5,000 copies of an open letter to the public entitled "Dear Friends" which stated in part (J.A. 96):

> We do not intend to perpetrate a personal attack on the Honorable Governor of the Canal Zone, for we are aware that he is only * * * an instrument of the boys in the black strip [sic] pants in the State Department, whose major goal since the time of Alger Hiss has been to implement the policy of New Americanism and erase all opinions opposed to their policies.

When the backgrounds and contexts of these two cases are compared I feel that the difference between them is somewhat analogous to the difference between black and white. The majority, however, abandons any crisp analysis of the two cases in favor of casting a grayish hue over the entire situation. At this juncture Judge Danaher's question to the majority is appropriate—"Do any of my colleagues really believe that the situation thus described * * * come(s) within Pickering * * *?" I feel that the Supreme Court's opinion answers that question. The Court specifically stated that

> [i]t is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal.[5]

I am convinced that Meehan occupied just such a position. Indeed, Meehan's conduct is easily distinguishable from that of a private citizen such as Picker-

ing who has no access to confidential information. Such a citizen has the protection of the Constitution when he writes a letter to the editor, publishes a pamphlet or petitions his Congressman. Meehan, however, quite unlike Pickering, is a governmental employee who knowingly exploited his access to confidential government information, thereby thwarting the official policy of the United States in a very sensitive area of foreign policy.

Although the Supreme Court offers no explicit opinion on a dismissal in the above described circumstances, the Court makes it clear that "significantly different considerations would be involved in such cases."[6] Thus, to me it is beyond doubt that, at the very least, the Supreme Court has said in Pickering that its rationale therein does not control a case such as Meehan's and is restricted to its own or similar factual situations. In fact, the Court enunciated this restriction in the opinion (391 U.S. at 569, 88 S.Ct. at 1735):

> Because of the enormous variety of fact situations in which critical statements by * * * other public employees may be thought by their superiors * * * to furnish grounds for dismissal, we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged.

Thus, I think that the language in Pickering tells us that it does not purport to govern or affect a situation such as Meehan's.

With the delimiting language of Pickering [7] in mind, I feel some additional differences between the two cases need be elaborated upon. In Pickering there

---

5. Pickering v. Board of Education, *supra* note 2, at 570 n.3, 88 S.Ct. at 1735.

6. *Id.*

7. Unlike *Pickering*, the challenged statements here were "directed towards [a] person [his immediate superior] with whom appellant would normally be in contact in the course of his daily work

* * *." 391 U.S. at 569–570, 88 S.Ct. at 1735. Such criticism of a superior, where the working relationship is largely dependent upon loyalty and confidence, impairs the superior's ability to function, undermines the entire employment relationship, and gravely impairs the governmental activity involved.

was no question of discipline or harmony among co-workers involved, no close working relationship involving personal loyalty, no prior admonition not to write such an article, and, most importantly, no volatile diplomatic situation in existence. Lastly, the majority seems to give tacit approval to appellant's argument that because his conduct did not *actually cause* any injuries or deaths it was therefore permissible conduct. This argument, however, plainly misconceives the applicable law. It is well settled that the Government may punish conduct which creates a "clear and present danger" of a substantive evil. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *accord,* Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). In other words, when a person screams "fire" in a crowded theatre he has committed an offense, even though no injuries may result from his action. In the posture of this case the pervasive threat of new outbreaks and violence which hovered over the Canal Zone at that time clearly rendered appellant's conduct a "clear and present danger" within the meaning of *Schenck.* Thus, I feel that the differences between appellant and Pickering are manifold. To ascribe to the Supreme Court any intent that *Pickering* be applied to foreign policy matters or to problems touching upon national security is nothing short of incredible. The restrictive language of *Pickering* and the multitude of Supreme Court cases confirming the broad latitude given by the Constitution to the Executive and Congress in these areas militate strongly against such a construction.

### III

Addressing myself now to the final aspect of my disagreement with the court, it seems to me that if the majority is going to interpret *Pickering* as affecting this case (which I am unable to do) it ought to tell the Commission *how* it affects Meehan's claim. Today's nebulous remand is, I feel, closely akin to an abdication of the judicial function. The majority remands for the introduc-

tion of additional evidence "in light of *Pickering.*" I feel compelled to ask—what sort of new evidence? This case has gone through a full administrative hearing, two separate stages of intermediate administrative review, a district court determination, a determination by a panel of this court, and now a hearing by this court *en banc.* I feel that at this point in this litigation, which has admittedly traversed a lengthy route, all the salient facts have been adduced. The case is certainly ripe for decision upon its present record, which is full and complete. It is my view that *Pickering* does not affect appellant's dismissal. The majority thinks that it might, but they do not say how. Instead, they remand for the Civil Service Commission to decide how, and without the elucidation of any standards, guidelines or even vague intimations of how *Pickering* will affect the merits of Meehan's claim of wrongful dismissal.

For these reasons I would terminate the litigation at this stage and affirm the decision of the district court.

I am authorized to state that Judge DANAHER and Judge BURGER concur in this opinion.