Allen **BENCE**, as an Individual and as a representative of the class of Milwaukee Policemen similarly situated, et al., Plaintiffs-Appellees,

v.

Harold A. **BREIER**, as an Individual and as Chief of Police of the City of Milwaukee and the City of Milwaukee, a municipality, Defendants-Appellants.

No. 73–1655.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1974.

Decided Aug. 14, 1974.

---

Rudolph T. Randa, Asst. City Atty., Milwaukee, Wis., for defendants-appellants.

Gerald P. Boyle, Milwaukee, Wis., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, CAMPBELL * and JAMESON, ** Senior District Judges.

CASTLE, Senior Circuit Judge.

Defendants Harold A. Breier, Chief of Police of Milwaukee, Wisconsin and the City of Milwaukee appeal from an order granting summary judgment in favor of plaintiffs Allen Bence and Carl E. Hanneman, Milwaukee policemen, and the Milwaukee Professional Policemen's Protective Association ("MPPPA"), in a civil rights action to compel the Milwaukee Police Department to remove official reprimands issued against Bence and Hanneman from its personnel files. On appeal, the defendants contend that the lower court erred in its determination that a Departmental rule proscribing "conduct unbecoming a member and detrimental to the service" was unconstitutionally vague. We affirm the order of the district court.

On July 13, 1970, the members of the Milwaukee Police Department's late shift, which normally commenced work at midnight, were alerted at 7 p. m. to stand by in their homes and be available for duty if a potential emergency situation materialized. Subsequently, the entire late shift was called to duty early, including thirty-six sergeants and patrolmen who were on their regular off day. In accordance with the terms of a contract between the City of Milwaukee and the MPPPA (the recognized bargaining agent for all members of the Milwaukee Police Department of the rank of sergeant or below), twenty of the thirty-six men were compensated at the rate of time and one-half. However, sixteen men did not receive the additional increment at that time, because their superiors failed to place the appropriate "CODE 8" or "CODE 9" designation on their time cards, as required by Departmental rule.

On the following day, Bence and Hanneman, the MPPPA's president and trustee, respectively, sent a letter to the City's chief labor negotiator, James J. Mortier, entitled "RE: OUR BAR-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

GAINING DEMAND FOR NEGOTIA-TIONS, YEAR 1971, ITEM 37, STAND-BY [sic] TIME and ABRIDGEMENT OF BENEFITS UNDER CURRENT CONTRACT." In the letter, Bence and Hanneman referred to the Department's alert on the previous evening as an example of a stand-by situation, which Mortier had allegedly previously asserted "never happens." The men then gave notice of their intention to press a demand for contractual compensation of stand-by time at the next bargaining session between the City and the MPPPA. Bence and Hanneman further stated that in their opinion many of the policemen called to duty early were on their regular off day, and they erroneously asserted, "None of these men on a regular off day July 13th, who were called to early duty on this regular off day, were compensated at the rate of time and one-half." The policemen requested that the labor negotiator investigate their information concerning uncompensated personnel and direct payment be made to those police patrolmen and sergeants entitled to the additional amount. Finally, the letter suggested that the term "regular off day" and similar terms be defined by the parties to the collective bargaining agreement in order to prevent any future misunderstandings. Bence and Hanneman had copies of this letter posted on MPPPA bulletin boards at various police locations.

Prior to sending the letter, Bence and Hanneman neither attempted to verify the accuracy of their allegation through consultation with their commanding officers nor sought to remedy the supposed breach of the collective bargaining agreement through intra-departmental demands. Rule 29, section 69, of the Rules and Regulations of the Milwaukee Police Department provides:

> Members of the Department who wish to air grievances regarding conditions of employment or other conditions which they believe are contrary to the best interests of the public service shall consult with their commanding officers in an effort to resolve their grievances. If the member feels that the matter requires further consideration, he shall make a detailed report through his commanding officer to the Chief of Police.

Bence told police investigators that his basis for the incorrect allegation in the letter was information received from policemen in a particular police district, while Hanneman stated that he relied on a discussion at a meeting of the MPPPA board of trustees.

On December 23, 1970, both Bence and Hanneman were officially reprimanded for violating rule 44, section 8, of the Department's rules and regulations, which provides:

> Any member of the Department may be dismissed from the service or suffer such other punishment as the Chief of Police may direct when charged with and when any of the following offenses are substantiated:
>
> . . .
>
> Conduct unbecoming a member and detrimental to the service. . . .[1]

---

1. Rule 44, Section 8, of the Rules and Regulations of the Milwaukee Police Department provides in full:

   Any member of the Department may be dismissed from the service or suffer such other punishment as the Chief of Police may direct when charged with and when any of the following offenses are substantiated:

   Commission of a felony or misdemeanor under any law or ordinance whatever
   Intoxication
   Cowardice
   Habitual indulgence in narcotic drug
   Insubordination or disrespect toward a superior officer
   Overbearing, oppressive, or tyrannical conduct in discharge of duty
   Neglect of duty
   Neglect or disobedience of any order
   Absent from duty without leave
   Immorality
   Conduct unbecoming an officer and detrimental to the service
   General inefficiency and incompetency
   Incapacity for duty, either mental, physical or educational
   Breach of discipline

The officers were advised that their reprimands would be made part of their personnel records, and they were admonished for using poor judgment and for failing to attempt to resolve the matter first through Departmental channels.

The sole issue presented on this appeal is whether the district court correctly concluded that the phrase "conduct unbecoming an officer and detrimental to the service" is unconstitutionally vague.

■ It is a central tenet of constitutional law that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). In that case, the Supreme Court sought to determine whether a criminal statute was "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Id.* At issue in the present case is a rule adopted by the Milwaukee Police Department to regulate the conduct of its members. However, it is well-settled that the prohibition against vagueness extends to administrative regulations affecting conditions of governmental employment as well as to penal statutes, for the former may be equally effective as a deterrent to the exercise of free speech as the latter. Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970); *see,* Soglin v. Kauffman, 418 F.2d 163 (7th Cir. 1969).

In both contexts, the policies underlying the proscription against vagueness are applicable:

First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters . . . for resolution on an *ad hoc* and subjective basis, with all the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked" (citations omitted). Grayned v. City of Rockford, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (Marshall, J.).

Vagueness, however, is a matter of degree and context. We recognize that "there are limitations in the English language with respect to being both specific and manageably brief," United States Civil Service Commission v. Na-

Neglect or refusal to pay just debts
Communication information relating to police work without permission
Making a false official statement
Willful maltreatment of a prisoner
Discourtesy or insolence
Untruthfulness
Sleeping while on duty
Uncleanliness in person or dress
Smoking while in uniform
Accepting bribe
Keeping fee, gift or reward
Criticizing department orders
Aiding persons to escape arrest

Refusing to give number of badge when requested
Neglecting to give receipt for property taken from prisoners
Failure to report any member violating rules or orders of department
Failure to report known violations of law or ordinances
Any other act or omission contrary to good order and discipline, or constituting a violation of any provisions of the Rules and Regulations of the Department, or any department order.

tional Association of Letter Carriers, AFL–CIO, 413 U.S. 548, 578–579, 93 S. Ct. 2880, 2897, 37 L.Ed.2d 796 (1973), and that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." Grayned v. City of Rockford, *supra* at 110, 92 S. Ct. at 2300. Moreover, we recognize that there "are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision," Smith v. Goguen, 415 U.S. 566, 581, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605, 42 U.S. L.W. 4393, 4398 (Mar. 25, 1974) and therefore the vagueness doctrine is "not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account

a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). Yet, the "root of the vagueness doctrine is a rough idea of fairness." *Id.*[2]

In contrast with Colten v. Kentucky, *supra*, and Waters v. Peterson, 495 F.2d 91 (D.C.Cir. 1973), there is no basis in this case for concluding that the conduct which the Chief of Police sought to proscribe is inherently unsusceptible to language expressing more specific prohibitions. Indeed, the Chief of Police was able to specifically identify thirty other grounds for termination or punishment, each of which would presumably also be unbecoming conduct. This case is also

---

2. Precisely because the "root of the vagueness doctrine is a rough idea of fairness," Colten v. Kentucky, *supra*, we take issue with the pronouncement in Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 835 (1968), mod., 138 U.S.App.D.C. 38, 425 F.2d 469 (1968), aff'd. en banc, 138 U.S.App.D.C. 41, 425 F.2d 472 (1969), that "[i]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation." Rather, we think a more correct interpretation of the law is that it is necessary in so far as it is feasible for the Government to delineate for its employees all conduct which might result in sanctions. The D. C. Circuit was, we believe, closer to the mark in Waters v. Peterson, 495 F.2d 91 (D.C.Cir. 1973), when it adopted the standard of impracticality of further precision of employee regulation. Assuming a lawful variance exists in permissible vagueness between criminal statutes and employee regulation, we do not think it just to simply defer to a mere governmental assertion of impracticality respecting rules challenged for vagueness. Due process demands that each challenged rule be examined in its context to determine whether in fact further specificity would be feasible or practicable.

We reject the suggestion in Waters v. Peterson, *id.* at 99, that "[w]here criminal prosecution is not at issue, a broad regulation can be given content by the authorities through its proper application." While it is true that a vague regulation can be salvaged through prior, narrowing interpretation, *e. g.*, Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, 42 U.S.L.W. 4979

(June 19, 1974), a vague regulation cannot be saved through prospective "proper application" simply because the rule contains no objective criteria for determining precisely what constitutes a "proper application." We further reject the intimation that the importance of Due Process varies with the severity of the punishment meted out to the employee. We cannot agree that punishment in the form of a reprimand, as in the case here, "substantially defangs the bite of a claim of unfairness due to vagueness." Waters v. Peterson, *supra* at 100. A reprimand, even when it "betoken[s] a determination that there has been a poor judgment," *id.*, unjustifiably besmirches an employment record that may otherwise be satisfactory and thus may limit promotion possibilities and salary advancement. Finally, we deem it highly significant that the *Waters* court recognized that the "necessity of 'catchall' regulations as a matter of administrative convenience does not obviate . . . the need to give content to such prohibitions by warnings, which give the general regulations a *requisite concreteness*, alerting the employee to the activity prohibited" (emphasis added). *Id.* at 99–100. The court then cited examples of supervisory warnings given the defendants in Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169 (1969) and Meehan v. Macy, *supra*. The obvious negative implication is that in the absence of such concretizing warnings (or limiting interpretation provided by an administrative manual, *see*, Parker v. Levy, *supra*), which is the case here, such "catchall" provisions must be considered impermissibly vague.

significantly different from Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), where the Supreme Court held that the provision authorizing removal or suspension of federal civil service employees "for such cause as will promote the efficiency of the service" was not unconstitutionally vague, given the intent of Congress to lay down an admittedly general standard "in order to give myriad different federal employees performing widely disparate tasks a common standard of job protection." In the present case, any vagueness inherent in the rule was not born of the necessity of broad application of a uniform rule to large populations engaged in multitudinous activities. Rather, the standard here was formulated by the Milwaukee Police Department to apply to an essentially homogeneous group of employees performing essentially similar job functions.

■ In determining whether the rule "conduct unbecoming a member and detrimental to the service" conforms with the constitutionally-mandated "rough idea of fairness," it is necessary to examine whether the rule creates a standard of conduct which is capable of objective interpretation by those policemen who must abide by it, by those Departmental officials who must enforce it, and by any administrative or judicial tribunal which might review any disciplinary proceeding. Bence v. Breier, 357 F.Supp. 231 (E.D.Wis.1973). On its face, the rule proscribes only conduct which is both "unbecoming" and "detrimental to the service." It is obvious, however, that any apparent limitation on the prohibited conduct through the use of these qualifying terms is illusory, for "unbecoming" and "detrimental to the service" have no inherent, objective content from which ascertainable standards defining the proscribed conduct could be fashioned. Like beauty, their content exists only in the eye of the beholder. The subjectivity implicit in the language of the rule permits police officials to enforce the rule with unfettered discretion,

and it is precisely this potential for arbitrary enforcement which is abhorrent to the Due Process Clause. Further, where, as here, a rule contains no ascertainable standards for enforcement, administrative and judicial review can be only a meaningless gesture. There is simply no benchmark against which the validity of the application of the rule in any particular disciplinary action can be tested. The language of the rule additionally offers no guidance to those conscientious members of the Department who seek to avoid the rule's proscription. Assuming that the Department (A) formulated the rule to apply to specific acts which it might constitutionally regulate, while (B) choosing not to regulate or to regulate in the remaining thirty prohibitions other acts which it might also constitutionally regulate, given the language of the rule, whether any particular act could be classified as (A) or (B) would be purely a matter of guesswork for policemen seeking to abide by the Department's rules. Thus, the rule at issue conforms with the classic definition of vagueness. *See,* Amsterdam, The Void-For-Vagueness Doctrine, 109 U.Pa.L.Rev. 67, 76 (1960).

Moreover, because this vague rule does abut on sensitive first amendment freedoms, it may operate to chill the exercise of those freedoms. Grayned v. City of Rockford, *supra*; Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Keyishian v. Board of Regents, 385 U.S. 589, 605, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). There is no authoritative interpretation of the rule, and nothing in the language of the rule purports to limit unbecoming conduct to exclude constitutionally-protected expressive conduct, whatever the intent of the framers of the rule. *See,* Arnett v. Kennedy, *supra*. Clearly, the application of this vague rule could result in the destruction of the limited right of the policeman, as a public employee with unique characteristics, to speak on matters concerning his employment—a right which this court recognized in Muller v. Conlisk, *supra*.

The defendants rejoin that even if the rule appears superficially vague, the phrase is rooted in the history of the law and has "a well-settled common-law meaning notwithstanding an element of degree in the definition as to which estimates might differ." Connally v. General Construction Co., *supra* at 391, 46 S. Ct. at 128. Historically, the rule is derived from ancient military tradition, including the British Articles of War of 1765 and the American Articles of War of 1775 and 1806; and the proscription against "conduct unbecoming an officer and a gentleman" is presently embodied in Article 133 of the Uniform Code of Military Justice. In Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, 42 U.S.L.W. 4979 (June 19, 1974), the Supreme Court reversed the Third Circuit's determination that Articles 133 and 134 were void for vagueness. *Sub nom.* Levy v. Parker, 478 F.2d 772 (3d Cir. 1973). The Third Circuit had found little difficulty in concluding that "as measured by contemporary standards of vagueness applicable to statutes and ordinances governing civilians," the general articles would "not pass constitutional muster." *Id.* at 793. That court additionally found no "countervailing military considerations which [would] justify the twisting of established standards of due process in order to hold inviolate these articles, so clearly repugnant under current constitutional values." *Id.* at 796. Significantly, the Court in reversing that decision disputed the latter finding of the Third Circuit, but as Mr. Justice Stewart pointed out in his dissent, the opinion of the Court did not seriously contend that the challenged articles were not vague on their face. The Court began its analysis by recognizing its tradition of viewing the military as a "specialized society separate from civilian society" with "a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." 417 U.S. at 743–744, 94 S.Ct. at 2555–2556, 42 U.S.L.W. at 4982. After noting that

the military has developed "customary military law" or "general usage of military service" in order "to maintain the discipline essential to perform its mission effectively," Mr. Justice Rehnquist stated for the Court, "Decisions of this Court during the last century have recognized that the longstanding customs and usages of the services impart accepted meaning to the *seemingly imprecise standards* of Arts. 133 and 134" (emphasis added). *Id.* at 744–747, 94 S.Ct. at 2556–2557, 42 U.S.L.W. at 4982–4983. Additionally, the Court determined that both articles had been construed by the United States Court of Military Appeals or by other military authorities, such as the Manual for Courts-Martial, in "such a manner as to at least partially narrow . . . [the rule's] otherwise broad scope." *Id.* at 752, 94 S.Ct. at 2560, 42 U.S.L.W. at 4985. *See, e. g.,* United States v. Howe, 17 U.S.C.M.A. 165, 177–178, 37 C.M.R. 429, 435 (1967) (limiting the scope of Article 133). The Court concluded that there "cannot be the slightest doubt that under the military precedents that there is a substantial range of conduct to which both Articles clearly apply without vagueness or imprecision." 417 U.S. at 754, 94 S.Ct. at 2561, 42 U.S. L.W. at 4986. Moreover, "even though sizeable areas of uncertainty as to the coverage of the Articles may remain after their official interpretation . . , further content may be supplied even in these areas by less formalized custom and usage." *Id.* The Court then clarified the law of standing, observing that "Levy had fair notice" from the rule as authoritatively construed and that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* The Court also stated that because of the factors distinguishing military society from civilian society, a greater presumption of validity attaches to military rules. More specifically, the Court held that "the proper standard of review for a vagueness challenge to the Articles of

the Uniform Code of Military Justice is the standard which applies to criminal statutes regulating economic affairs." *Id.*

However, even though the phrase "conduct unbecoming an officer and a gentleman" has attained a fixed and certain content in the military which is constitutionally sufficient to withstand an attack on vagueness grounds, it does not follow that that content is transferable to civilian police department rules incorporating the same language. None of the military precedents or military authorities has application in a civilian context, and the longstanding customs and usages, which have developed historically in the military, are unfamiliar to nonmilitary personnel. Moreover, "[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline," which "differentiate military society from civilian society" and which permit Congress "to legislate both with greater breadth and with greater flexibility when proscribing the rules by which the former shall be governed than . . . when prescribing rules for the latter," *id.* at at 756, 94 S.Ct. at 2561, 42 U.S.L.W. at 4986–4987, is less exigent in a civilian police context. In Muller v. Conlisk, 429 F.2d at 904, this court rejected the military-civilian police analogy as too inexact to have utility when a determination of constitutional rights is at issue, holding that the demand for police discipline is simply one factor "to influence the balance which *Pickering* says must be struck in each case." Thus, we conclude that neither the narrowing authoritative interpretations nor the rationale permitting a somewhat more flexible test of vagueness has currency in the case presented here.

The defendants next assert that under Wisconsin law relating to the operation of police departments, "conduct unbecoming" has a specific, definable content in that it is synonymous with "cause" for removal and likewise reflects a violation of the inherent responsibilities of public service. *See* Wis.Stats. § 62.-13(5)(b) (1971). There is no Wisconsin authority, however, construing unbecoming conduct as synonymous with cause. While some jurisdictions have developed expansive definitions of cause, *see e. g.*, Appeal of Emmons, 63 N.J.Super. 136, 164 A.2d 184, 187 (1963), the Wisconsin Supreme Court has expressly stated that cause contemplates misfeasance or nonfeasance [except when there is an economic justification, *see* Wis. Stats. § 62.13(5m)]. Schoonover v. City of Viroqua, 244 Wis. 615, 12 N.W. 2d 912 (1944). It was in this context that the Wisconsin Supreme Court rejected a vagueness challenge to an "unbecoming conduct" rule as apparently immaterial in Wisconsin ex rel. Gudlin v. Civil Service Commission, 27 Wis.2d 77, 86, 133 N.W.2d 799, 804 (1965). The court stated in dicta: "We point out the impropriety of the appellant's conduct [adultery] has been determined by the legislature, in proscribing criminal penalties for it, and the commission did not have to resort to any subjective standard in order to deem it immoral, unbecoming and offensive" (emphasis added). *Id.*[3] However, since cause is limited to misfeasance and nonfeasance and since the regulation in this case specifically proscribes both misfeasance and nonfeasance in addition to the unbecoming conduct prohibition, unbecoming conduct could neither be synonymous with cause nor have any ascertainable, exclusive content. It is precisely be-

3. In Wisconsin ex rel. Richey v. Neenah Police and Fire Commission, 48 Wis.2d 575, 180 N.W.2d 743, 747 (1970), the Wisconsin Supreme Court erroneously cited *Gudlin* for the proposition that " 'conduct unbecoming an officer' is not too vague to define a cause for discharge." That point was not squarely

reached in *Gudlin*. See, Wisconsin ex rel. Richey v. Neenah Police and Fire Commission, *supra* at 749 (Heffernan, J., dissenting). *See also*, Wisconsin ex rel. Momon v. Milwaukee County Civil Service Commission, 61 Wis.2d 313, 312 N.W.2d 158 (1973).

cause unbecoming conduct is, as the Wisconsin Supreme Court noted, a subjective standard that it is capable of arbitrary application and therefore must fall under the Due Process Clause.

We similarly find no guidance in comprehending the conduct proscribed in the rule from examining cases from other jurisdictions cited by the defendants. For example, the Pennsylvania Supreme Court in the case of In re Zever's Appeal, 398 Pa. 35, 156 A.2d 821 (1959) found, "Unbecoming conduct on the part of a municipal employee, especially a policeman . . . is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. . . . Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Clearly, this definition is vague, as the proscribed conduct is phrased in such generalities as to leave the policeman bereft of any ascertainable standard with which to guide his conduct. It was this recognition that "conduct unbecoming" presents a standard "so impalpable as to be no standard at all" which lay at the heart of the recent holdings of the Michigan Court of Appeals that the phrase is unconstitutionally vague. Hamtramck Civil Service Commission v. Pitlock, 44 Mich.App. 410, 205 N.W.2d 293, 295 (1973); Sponick v. City of Detroit Police Department, 49 Mich.App. 162, 211 N.W.2d 674 (1973).

■ Even if the rule at issue in this case were not unconstitutionally vague on its face, its application in these circumstances would be constitutionally impermissible. Bence and Hanneman, as officers of the policemen's collective bargaining unit, merely sent a letter to the city's labor negotiator outlining a proposed bargaining demand for the next round of negotiations, explaining the incident which provided the basis for the demand, and requesting that if the facts

relative to the incident were found to be true, the appropriate compensatory measures be taken. To inform the MPPPA membership of action taken by their officers, copies of the letter were posted on various MPPPA bulletin boards. First, even if the rule respecting prior intradepartmental consulation on employment conditions could be constitutionally applied to Milwaukee policemen in general (an issue we need not reach),[4] that rule could hardly be intended to stifle or filter communications between duly elected representatives of the officially recognized collective bargaining unit of the Milwaukee Police Department and the city's chief labor negotiator. Moreover, in permitting the erection of MPPPA bulletin boards at police stations and bureaus, the Milwaukee Police Department obviously realized that the boards would be used to display matters pertaining to conditions of employment and implicitly recognized that the dissemination of such matters through the use of the bulletin boards would not constitute unbecoming conduct.

Because the rule in this case is vague as applied to the plaintiffs, Bence and Hanneman, the case is readily distinguishable from other cases involving similar language where courts have determined that the plaintiffs lack standing to challenge the vagueness of a regulation, because the plaintiffs' conduct was deemed to provide notice (*i. e.*, the rule was not vague as applied to a plaintiff). In Allen v. City of Greensboro, 452 F.2d 489 (1971), the Fourth Circuit stated that a police detective "knew the precise nature of the charge" [improper advances toward a young woman during the course of a police investigation] in rejecting a vagueness challenge on a regulation proscribing "conduct unbecoming an officer and a gentleman." Significantly, the court added that "the argument that the regulation . . . is so vague as to provide no guidance to police officers in ascertaining the proper

4. *See*, Gieringer v. Center School District No. 58, 477 F.2d 1164, (8th Cir. 1973), cert. den., 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed. 2d 66 (1974).

standard of conduct may well be valid in other circumstances. . . . " *Id.* at 491. Similarly, Judge Leventhal, writing for the D. C. Circuit in Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 835 (1968), mod. 138 U.S.App.D.C. 38, 425 F.2d 469 (1968), aff'd en banc, 138 U.S.App.D.C. 41, 425 F.2d 472 (1969), dismissed a vagueness contention respecting a rule prohibiting "conduct unbecoming an officer" apparently on standing grounds: "We think it is inherent in the employment relationship as a matter of common sense if not common law that [a governmental] employee . . . cannot reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory [cartoons] . . . . [Dismissal in such circumstances does not come] as an unfair surprise or is so unexpected or uncertain as to chill his freedom to engage in appropriate speech." [5]

The order of the district court is affirmed.

Affirmed.

JAMESON, Senior District Judge (concurring in part, dissenting in part):

I am unable to agree with the majority that the rule of the Milwaukee Police Department proscribing "conduct unbecoming a member and detrimental to the service" is unconstitutionally vague.

It is, of course, well settled that due process requires that a penal statute be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." A statute which "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).[1] Moreover, where the statute's literal scope "is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974).

On the other hand, the test for vagueness is less stringent in other contexts. For example, with respect to criminal statutes regulating economic affairs, "Void for vagueness simply means that criminal responsiblity should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. National Dairy Products Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). In the recent case of Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, 42 U.S.L.W. 4979 (June 19, 1974), the Court held that the proper standard of review for a vagueness challenge to the Uniform Code of Military Justice was that applicable to criminal statutes regulating economic affairs. Applying that standard, the Court upheld an article to the Code providing for punishment of an officer for "conduct unbecoming an officer and gentleman."

It is true, as Judge Castle has set forth in his opinion, that Parker v. Levy recognized that "[f]or the reasons which differentiate military society from civilian society . . . Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed. . . ." The Court continued: "But each of these differentiations

---

5. We do not believe that these few idiosyncratic instances in which conduct has given rise to notice under a similar rule amount to the substantial clarifying precedent necessary to save a rule which is vague on its face. *See*, Parker v Levy, *supra.*

1. With respect to a penal statute, due process is denied where statutory language of "standardless sweep allows policemen, prosecutors, and juries to pursue their personal predelictions." Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974).

relate to how strict a test of vagueness shall be applied in judging a particular criminal statute."

The decisions of the Supreme Court construing the vagueness doctrine have not considered the proper test for vagueness in the precise situation presented in this case. Here, we are not concerned with a penal statute which may leave the general public uncertain as to the criminal conduct it prohibits, but rather with a rule adopted by the Police Department to govern its own internal affairs and regulate the conduct of its employees. While the prohibition against vagueness extends to administrative regulations affecting conditions of governmental employment, a less stringent standard should be applied by reason of employees' familiarity with the duties of their employment and the impracticability of defining precisely all prohibited conduct.[2] "It is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibitive conduct of employees includes 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.' " Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 835 (1968), mod., 138 U.S.App.D.C. 38, 425 F.2d 469 (1968), aff'd en banc, 138 U.S. App.D.C. 41, 425 F.2d 472 (1969). "Moreover, where criminal prosecution is not at issue, a broad regulation can be given content by the authorities through its proper application." Waters v. Peterson, 495 F.2d 91, 99 (D.C.Cir. 1973).

The less stringent standard for the military followed in Parker v. Levy was justified in part by the historical and traditional recognition of the phrase "conduct unbecoming an officer" and in part by the "fundamental necessity for obedience, and the consequent necessity for imposition of discipline." To a large extent the same considerations apply to a police officer. Custom and usage have given content to the phrase "conduct unbecoming a member and detrimental to the service." Certainly with respect to a member of a police department, there is need for "maintenance of discipline" and the "elimination of conduct which may reasonably be thought to have 'impeded' proper performance of duty." *See*, Goldwasser v. Brown, 135 U.S.App. D.C. 222, 417 F.2d 1169, 1177 (1969).[3]

The mere fact that every offense to which any sanction may apply is not specifically defined does not, in my opinion, vest "unfettered discretion in the Chief of Police." His discretion is confined within accepted bounds and is subject to review.

While I am not persuaded that the rule in question is vague *per se*, I do agree with the majority that its application under the circumstances of this case was constitutionally impermissible. On this basis I join in affirming the order of the district court.

---

2. In addition, governmental rules or regulations are construed by the employer or superior officer rather than being indiscriminately construed by "policemen, prosecutors, and juries." See n. 1.

3. In addition, it may be noted that in Parker v. Levy, *supra*, a four year prison sentence had been imposed. Here the punishment was an official reprimand which became a part of appellees' personnel record. As noted in Waters v. Peterson, *supra*, "The vagueness problem is diluted, even when there has been no specific warning implementing the general regulation, when the sanction has only the ambiguous quality of reprimand." *Id.* at 100.