**Janet SHAWGO and Stanley Whisenhunt, Plaintiffs-Appellants,**

**v.**

**Lee SPRADLIN, Chief of Police, City of Amarillo, Texas, et al., Defendants-Appellees.**

No. 82–1097.

United States Court of Appeals, Fifth Circuit.

March 28, 1983.

James C. Harrington, American Civil Liberties Foundation of Texas, Inc., San Juan, Tex., Selden B. Hale, Amarillo, Tex., for plaintiffs-appellants.

Merril E. Nunn, Joe Harlan and Mac W. Hancock, III, Amarillo, Tex., for defendants-appellees.

Before WISDOM, REAVLEY and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs Janet Shawgo and Stanley Whisenhunt, former police officers employed by the Amarillo Police Department (the Department), sued the City of Amarillo, the Chief of Police, and various members of Amarillo's Civil Service Commission (the Commission) seeking reinstatement and monetary damages. They allege that the defendants, acting in accordance with departmental and city rules, instituted disciplinary action against the plaintiffs for off-duty dating and alleged cohabitation, which invaded their privacy and violated due process. We affirm the district court's determination that the defendants' actions did not afford the plaintiffs a cause of action for a violation of a constitutional right under 42 U.S.C. § 1983, finding that the plaintiffs were afforded a state hearing that satisfied the requisites of constitutional due process and that the disciplinary actions did not violate the plaintiffs' privacy interests.

*The Facts*

Shawgo and Sergeant Whisenhunt, non-probationary employees working different shifts, met and began dating while they were employed by the Amarillo Police Department. Shawgo, a patrolwoman with the Department for over a year, was not under the supervision of Whisenhunt, a sergeant who had been with the force for eleven years. Whisenhunt informed his immediate supervisor, Lieutenant Boydston, that he was dating Shawgo. As his relationship with Shawgo became more serious, Whisenhunt informed Lieutenant Boydston that he and Shawgo would probably be spending the night together. The supervising officer told Whisenhunt "that that would probably be fine, [but] that I didn't want the two of them setting up housekeeping." Thereafter, the plaintiffs spent a considerable amount of off-duty hours together, but, as instructed, maintained separate residences. Whisenhunt also received Lieutenant Boydston's permission to share an apartment with John Edwards, a subordinate officer at the Department.

In the fall of 1977, a defendant, Chief of Police Lee Spradlin, heard rumors within the police department that Shawgo and Whisenhunt were living together. The Chief did not confront either Shawgo or Whisenhunt concerning the rumors; nor did he contact their supervisors. Instead, he ordered officers in the Department's Detective Division to conduct a surveillance of Whisenhunt and Shawgo's off-duty activities. From December 1 to December 17, 1977 the investigating officers observed Shawgo's entrances to and exits from Whisenhunt's residence from a car parked in front of the apartment and from the apartment across from Whisenhunt's, which they rented for purposes of surveillance. Their written report to Chief Spradlin detailed the times of Shawgo's visits, but also indicated that Shawgo was maintaining a separate residence.

Based on the investigation report and concerned with moral discipline and the employees' public image, Chief Spradlin recommended that the plaintiffs be disciplined for violations of the General Rules of the Rules and Regulations of the Amarillo Police Department. Shawgo was suspended for twelve days without pay after notification that her "cohabitation" outside marriage violated Section 113, Part 8, proscribing conduct that "if brought to the attention of the public, could result in justified unfavorable criticism of that member or the department." Whisenhunt was also suspended for twelve days and recommended

for demotion from sergeant to patrolman for cohabitation with Shawgo and for sharing an apartment and expenses with subordinate officer Edwards. Whisenhunt's acts allegedly violated Section 113, Part 8, quoted above (conduct that "could result in justified unfavorable criticism," if brought to public attention); Section 123, which requires "diligent and competent" performance of duties that are not "otherwise specifically prescribed" in the regulations [1]; and Rule XIX, Section 108 of the Personnel Rules of the City of Amarillo, which proscribes "conduct prejudicial to good order." Chief Spradlin did not give the plaintiffs an opportunity to respond to these charges before suspension. No Amarillo police officer had ever before been disciplined for dating or cohabitation.

Shawgo and Whisenhunt requested and received a hearing before the Civil Service Commission of Amarillo, as was their statutory right. The Commission sustained the suspensions and ordered Whisenhunt's demotion to patrolman. The Commission, however, excluded from its hearing evidence of other known, but unpunished instances of interforce dating, cohabitation, and apartment-sharing between superiors and subordinates. There was no evidence at the Commission hearing or at the district court that the plaintiffs did not adequately perform their duties while they were dating, that their conduct distracted from service to the public, or that they violated any state law.

The suspensions and the public Commission hearing generated much publicity in Amarillo. At the later trial in federal district court, Shawgo testified that she encountered hostility and rude remarks concerning her relationship with Whisenhunt within the Department and from the public;

she also claimed to have been assigned by herself, instead of with a partner, to isolated field patrols. She resigned on March 8, 1978. After Whisenhunt's demotion and transfer from the active uniform division to the records department, he stamped file folders, wrote up telephone reports, and was isolated from the police officers he had previously supervised. He resigned on February 1, 1978.

The federal district court, after hearing testimony concerning the plaintiffs' civil rights claims, concluded that the temporary suspensions from duty for less than fifteen days did not constitute deprivation of a property interest protected by the Fourteenth Amendment. The district court found that Whisenhunt's demotion similarly did not constitute deprivation of a protected property interest and that Shawgo and Whisenhunt had not been constructively discharged from employment. Despite the absence of a protected interest, the district court addressed the plaintiffs' due process arguments, concluding that the Department's and city civil service rules were not unconstitutionally vague or overbroad on their face or as applied, since the personal relationship between Shawgo and Whisenhunt and Whisenhunt's living arrangement with a male subordinate officer were reasonably within the scope of conduct proscribed by the Department and city rules. The court found that the Commission hearing was fair and without constitutional violation.

On appeal, the plaintiffs claim that they were denied property and privacy interests without due process because they did not have either a *pre*-suspension opportunity to respond to charges or, subsequently, a fair hearing before the Commission; that their

1. These rules and regulations, in effect during the plaintiffs' employment with the Department, provide in full:

   *Section 113, Part 8:* No member shall engage in any personal conduct or act which, if brought to the attention of the public, could result in justified unfavorable criticism of that member or the department. No member be [sic] involved personally, in disturbances or police incidents to his discredit.

   *Section 123:* Any member or employee of this department whose duties and responsibilities are not otherwise specifically prescribed in these rules and regulations shall be faithful in attendance to, diligent and competent in the performance of such duties as are indicated by the title by which he is assigned.

due process rights were violated because regulations under which they were disciplined were unconstitutionally broad and vague and failed to provide them with notice that their lawful, off-duty, discreet and private conduct would render them liable to disciplinary penalties; that their due process rights were violated because the Department's *selective* enforcement of its vague catchall regulations, as applied, had deprived them of notice because Whisenhunt's superior had tacitly approved their conduct as permissible and because other couples in the Department had engaged in similar activity without penalty; and that the intensive surveillance and investigation of the off-duty activities, conduct unrelated to performance of their office duties, violated their privacy and did not serve a legitimate state interest.

The defendants contend that the plaintiffs have no protected property interest under Texas law, that they received adequate notice and opportunity to be heard before the Commission and the district court, that the Department and City rules prescribing personal conduct are constitutional, and that the compelling state interest in maintaining order within the police department justified any invasion of privacy that may have occurred by the surveillance and surreptitious investigation.

We shall discuss the issues raised by this appeal under three sections of this opinion, as follows: I. Due Process Contentions; II. Due Process—Constructive Discharge; and III. Right to Privacy.

## I. *Due Process Contentions*

The plaintiffs contend that they were denied due process in being suspended and (in Whisenhunt's case) demoted, without notice that their conduct was subject to penalty and without an opportunity to re-

but adequately the charges. We shall divide our discussion of these particular contentions into three sub-parts, *A.* General Overview; *B.* The Twelve-Day Suspensions of the Plaintiffs; and *C.* The Demotion of Sergeant Whisenhunt. (They also contend that, as a consequence of these constitutional violations, they were constructively discharged in violation of due process rights, a contention we shall discuss in Part II, *infra.*)

## A. *General Overview*

The general issue posed by this litigation concerns the federal due process principles that govern a state governmental unit's discipline of its employees. The particular concern is with regard to federal due process considerations involved when a disciplined employee asserts in federal court an action against his state employer under 42 U.S.C. § 1983, upon a claim that his constitutional due process rights have been offended by the procedures or regulations of his employer in disciplining him.

Under the conventional methodology, a claimed denial of procedural due process is first addressed to the issue of whether the employee had a constitutionally protected interest. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1974); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). A governmental employee's interest in his continued employment is a "property interest entitling him to claim federal due process protection if there are rules or mutually explicit understandings that afford to an employee a reasonable expectation to security of interest in his job." *Bishop v. Wood, supra,* 426 U.S. at 346 n. 8, 96 S.Ct. at 2078 n. 8; *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699 (1972).[2]

**2.** A property interest has been defined by the Supreme Court as follows:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

. . . .

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain

■ The underlying conception of a "property" interest is "to protect those claims upon which people rely in their daily lives, reliance that must not be *arbitrarily* undermined." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2079, quoted in *Bishop v. Wood, supra,* 426 U.S. at 344 n. 7, 96 S.Ct. at 2077, n. 7 (emphasis added). Whether a property interest in employment has been created by an enactment or an implied contract must be decided at least initially by a reference to state law, *Bishop v. Wood,* 426 U.S. at 344, 96 S.Ct. 2077; although, as we stated in *Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir.1981):

> "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (citations omitted). Accord, *Thompson v. Bass,* 616 F.2d 1259, 1265 (5th Cir.), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980); * * *

*See also* Van Alstyne, Cracks in "The New Property": Adjudicative Due Process in the Administrative State, 62 Cornell L.Rev. 445 (1977); Rabin, Job Security in Due Process: Monitoring Administrative Discretion Through a Reasons Requirement, 44 U.Chi. L.Rev. 60 (1976).

### B. The Twelve-Day Suspensions of the Plaintiffs

As noted, the Chief of Police suspended the plaintiffs for twelve days for violations of "catchall" conduct regulations, upon receipt of the investigating report showing their probable intimacy. No prior notice of a contemplated disciplinary suspension was given, nor was there a presuspension hearing. We shall now consider the plaintiffs' contention that their procedural due process rights were offended by lack of notice and hearing prior to their suspension for twelve days.[3]

The Texas statutory law in effect at the time of the plaintiffs' activities, Firemen's and Policemen's Civil Service Law, Tex. Rev.Civ.Stat.Ann. art. 1269m(20) (1975), grants authority to the head of the police department to "suspend any officer under his jurisdiction or supervision for disciplinary purposes, for reasonable periods, not to exceed fifteen days." That statute further affords a right of appeal by employees disciplined by such *temporary* suspensions to the Civil Service Commission, with a full and complete hearing before it to determine if just cause for the suspension existed; if not, the Commission may reverse the Chief's suspension. While judicial review in the state courts is afforded for dismissals, demotions, and more serious disciplinary actions, the statute does not afford judicial review of the Commission's affirmance of such temporary (fifteen days or less) suspensions. *Firemen's and Policemen's Civil Service Commission of the City of Fort Worth v. Blanchard,* 582 S.W.2d 778 (Tex. 1979); *Fox v. Carr,* 552 S.W.2d 885, 887–88 (Tex.Civ.App.1977).[4]

*Bishop v. Wood, supra,* read literally, would not recognize a property interest suf-

---

benefits and that support claims of entitlement to those benefits.
*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1971).

3. The plaintiff Shawgo's additional complaint is that she was "constructively discharged" as a result of the suspension and the appeal therefrom. *See* Part III of this opinion, *infra.* Both plaintiffs likewise contend that due process rights of notice and an adequate hearing were violated by the vague catchall provisions as applied, and by the refusal by the Civil Service Commission upon its review of the disciplinary actions to receive evidence that indicated dis-

criminatory and improperly selective application of the regulations to these plaintiffs alone; resolution of these contentions is subsumed under Part II.C. of this opinion, *infra.*

4. The plaintiffs' reliance on *Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir.1976), as requiring a presuspension due process hearing, is misplaced. The court in *Thurston* required the city to give a pre-termination hearing before an *indefinite* suspension that in effect constituted a dismissal. Here, the suspension was for a definite temporary period, determined under state law not to constitute a property interest.

ficient to require a presuspension hearing. The statute affording tenure rights to the police employees "grant[ed] no right to continued employment but merely condition[ed] an employee's [suspension] on compliance with certain specified procedures." *Id.,* 426 U.S. at 345, 96 S.Ct. at 2078. With regard to the plaintiffs' rights to a hearing prior to a temporary suspension, "the employee is merely given certain procedural rights" by the employment statute, which were not "violated in this case", *id.,* 426 U.S. at 347, 96 S.Ct. at 2079, because these police employees were in fact afforded a *post*-suspension hearing, the only one to which they were entitled under this statute.

■ Whatever limited property interest against arbitrary suspensions was granted to the plaintiff by the statute, federal due process does not require a hearing prior to the imposition of this minimal, statutorily-limited sanction. *Mathews v. Eldridge,* 424 U.S. 319, 335, 343, 96 S.Ct. 893, 903, 907, 47 L.Ed.2d 18 (1976).[5] The post-suspension hearing is sufficient protection, under these circumstances, against arbitrary imposition of this temporary and limited disciplinary action. *Id.* " 'Due process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.,* 424 U.S. at 334, 96 S.Ct. at 902.[6]

### C. *The Demotion of Sergeant Whisenhunt*

Whisenhunt was demoted from sergeant to patrolman in accordance with the Texas policemen's civil service statutory provisions. They require cause for a demotion of a policeman and afford him a "full and complete public hearing" before the Commission approves a supervisor's recommendation for demotion, Tex.Rev.Civ.Stat.Ann. art. 1269m(19), with judicial review de novo in the state district court, *id.,* art. 1269m(18). (We are informed that, in fact, Whisenhunt has applied for state judicial review of his demotion, and that the state court suit has been held on the docket pending the outcome of the present federal litigation.)

■ Under the jurisprudence previously cited, Whisenhunt has a constitutionally protected property interest under the statute, which requires cause for his demotion. The permanency of the personnel action and the substantial loss of benefits inherent in a demotion, as well as the existence of "rules or mutually explicit understandings," *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1979), support the employee's reasonable expectation of continued status unless cause exists for demotion; these factors create a legitimate claim of entitlement protected by the Due Process clause. *See Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir.1981) (state code requiring cause for demotion and guaranteeing a hearing created reasonable expectation of continued status, and therefore, a protected property interest). *Cf. Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977) (finding no property interest with respect to demotion where the municipal code stated that employee served in his special capacity "only at the pleasure of the chief of police and the mayor").[7]

---

**5.** In holding that a prior hearing was not required before the termination of social security disability benefits, the Court observed:

our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

**6.** The *Mathews* Court advocated this flexible approach to scrutinizing procedures because due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." 424 U.S. at 334, 96 S.Ct. at 902.

**7.** In holding that Whisenhunt had no constitutionally protected property interest against arbitrary demotion, the district court relied on the Texas Supreme Court's holding in *City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 792 (Tex.1951), that maintaining a certain

Whisenhunt claims that he was not accorded due process in his demotion. He asserts principally that (1) the catchall personnel statutes were impermissibly vague as applied and thus did not provide him fair notice of what conduct would subject him to penalty, and (2) the pre-demotion Civil Service Commission hearing did not satisfy the requirements of due process because the Commission excluded relevant evidence that the disciplinary action was taken in retaliation for Whisenhunt's exercise of First Amendment rights and was selectively enforced against him.

### (1) Lack of Notice

Whisenhunt makes the strong argument that he could not have known that his conduct—cohabitation with Shawgo—was within the prohibition of the general police and city regulations, and that he was thereby subjected to punishment without fair notice. The catchall regulations proscribing "conduct prejudicial to good order" and conduct that could bring unjustified public criticism of the involved individual police officers or the Department as a whole were vague as applied, he argues, noting that other officers in the Department commonly engaged in the same activities without penalty, and that Whisenhunt had received permission from his superior to date and spend the night with Shawgo so long as the couple "did not set up housekeeping together."

The plaintiff does not attack the facial validity of these catchall personnel regulations, which have been upheld by the courts, *see, e.g., Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Davis v. Williams,* 617 F.2d 1100, 1105 (5th Cir.1980) (en banc),[8] and this court does not review the merits of the Commission's determinations that the plaintiffs did engage in interforce "cohabitation" and that Whisenhunt shared an apartment with a subordinate officer. Rather, we consider whether the catchall regulations are unconstitutionally vague *as applied* in these circumstances.

Federal courts have considered federal due process challenges for lack of notice in a number of contexts. Facially vague criminal statutes have been frequently struck down. *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), *Coates v. Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). In administrative regulation cases imposing substantial economic and penal sanctions, the rule either on its face or as applied must give the regulated party fair warning and a reasonable standard of culpability. *See Connally v. General Construction Company,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Vagueness-as-applied considerations often enter into First Amendment overbreadth cases, where the court finds that the catchall statute, while giving notice of most proscribed conduct, may nonetheless chill constitutionally-protected free speech because of the uncertainty of a speaker as to whether his speech will or will not fall within the scope of the vague area of the regulation and incur governmental sanction. *See, e.g., Gooding v. Wilson,* 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972); *Bence v. Breier,* 501 F.2d 1185, 1188 (7th Cir.1974).

In assessing due process vagueness challenges to the validity of regulations that do not invoke criminal penalties or do not infringe on constitutionally-protected activi-

---

rank in a city police department is not a vested property interest because the city may, by ordinance, abolish a certain position held by an individual or the entire rank, *see* Tex.Rev.Civ. Stat.Ann. art. 1269m(21). However, the state has created by its rules an expectation that unless the position is abolished (a situation not at issue here), the employee may be demoted only for cause and after hearing; federal due process requires that a citizen may not be deprived of the benefits of that state-created entitlement without due process. *Cf. Winkler v. County of DeKalb, supra,* 648 F.2d at 412 n. 2

(similar statute permitted elimination of certain ranks, but determination that demotion requires due process).

**8.** While upholding the facial validity of a regulation similar to the present regulations, the en banc majority in *Davis* nonetheless recognized that there could be instances where a statute or regulation, valid on its face, could be attacked on other vagueness grounds. *Id.* (citing to *Bence v. Breier,* 501 F.2d 1185 (7th Cir.1974), a vagueness-as-applied case).

ties, however, courts have balanced administrative necessities with the individual's need of notice. These decisions emphasize that "[f]air notice ... requires some attempt at specifying what action constitutes cause [for punishment], but it may well be impossible for the mind to imagine or the hand to transcribe every sort of human misconduct that might fairly call for discipline." *Davis v. Williams, supra,* 617 F.2d at 1103.

In the present case, however, we are not reviewing the due process requirements of a criminal statute, a governmental administrative regulation, or a state personnel rule that may unduly infringe First Amendment rights. *See generally* Note, Vagueness Doctrine, 53 Tex.L.Rev. 1298, 1305 & n. 40 (1975). Rather, our concern is the federal-due-process requirements of notice that must precede state discipline of its employees for conduct that is not in itself constitutionally protected.[9]

Whisenhunt makes an extremely persuasive case that his suspension was based upon constitutionally inadequate notice that his private conduct was cause for official discipline. He did not receive warning of the consequences of off-duty behavior that was a common practice at the Department and was expressly or tacitly approved by his supervisor. The actual conduct for which he was punished—dating and spending the night with a co-employee—is not self-evidently within the ambit of the regulations and thus does not carry with it its own warning of wrongdoing, as does illegal conduct, *see, e.g., Glenn v. Newman,* 614 F.2d 467, 473 (5th Cir.1980) (officer's conduct may have constituted offense of contributing to the delinquency of a minor); *Allen v. City of Greensboro,* 452 F.2d 489, 491 (4th Cir.1971) (improper advances toward a young woman during course of investigation), or acts of clear insubordination, *see Kannisto v. City & County of San Francisco,* 541 F.2d 841, 843 (9th Cir.1976) (police

officer who publicly denigrates his supervisors has notice of applicability of general "maintaining discipline" provision). In addition, the plaintiff here had no objective indication that his off-duty activities impaired his job effectiveness.

Moreover, the catchall regulation had not been given content by prior instances of discipline, for "the conduct resulting in their suspension was virtually identical to conduct previously tolerated." *Waters v. Peterson,* 495 F.2d 91, 100 (D.C.Cir.1973). The plaintiff had no notice, because he was the first officer disciplined for activities that were approved by his supervisor and that he had valid reasons to believe were common in the police force. In addition, by knowingly tolerating similar activities by other individuals, the Department may be seen as sanctioning conduct that could have fallen within the scope of the rule. *See Bence v. Breier, supra,* 501 F.2d at 1193. Whisenhunt's supervisor's express or tacit approval, the implicit sanctioning of similar behavior in the Department, and the absence of warnings or prior instances of punishment, all raised a reasonable inference contradictory to the scope later ascribed to the general rule. *Cf. id.*

The circumstances under which Whisenhunt was demoted may not seem "fair" to us as judges, and we may hope that state judicial review affords a remedy for such unfairness as is perceived by us. Nevertheless, a federal court must heed the dictates of federalism that, where there is not an independently protected constitutional right, a federal court is not

the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal

---

**9.** In thus limiting our due process discussion with regard to imposition of due process notice requirements in state-controlled employee discipline proceedings, we rely on the district court's determination, held by us not to be

clearly erroneous, that the plaintiffs were not disciplined in retaliation for exercise of First Amendment freedoms (*see* note 13 *infra*), nor for exercise of a fundamental right to privacy (discussed in Part III, *infra*).

judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2080.

■ However easy it would have been for the Department to cure the "taint" of lack of notice in this instance by providing the officer with some "ascertainable standard with which to guide [his] conduct," *Bence v. Breier, supra,* 501 F.2d at 1193, or to provide a warning before punishment,[10] a federal court may not, absent impingement on a constitutionally protected right, prescribe the contents of the specific guidelines a state governmental unit must provide to direct the conduct of its employee in off-duty activities. We may not thereby exact detailed conditions of notice that the state must provide to its employees before taking disciplinary action with regard to off-duty activities that are not within a protection of the federal constitution.

■ At issue in the present case is a routine personnel decision, a demotion, for which Whisenhunt received a civil service commission hearing, with notice of the charged violations and the specific conduct for which he was to be disciplined. He was able to present at this hearing the compelling argument he now presents before this court—that his supervisor expressly approved the behavior for which he was punished; that defense, rejected by the Com-

mission, is still subject to state judicial review and may well be decided favorably to him thereon. Emphasizing that the underlying conduct—cohabitation or romantic involvement between a subordinate and superior officer—was within the scope of state personnel regulation and not independently protected by the Constitution (as is, for example, first amendment speech), we find that—in the context of a § 1983 action brought in federal court to review personnel disciplinary actions by state governmental agencies—the notice provided by the state civil service regulations, however vague it may have been that the conduct for Whisenhunt which was disciplined was subject to sanction, did not nevertheless offend the minimum requirements of federal due process with regard to the state's discipline of its employees for conduct that is not in itself constitutionally protected and that was reasonably within the scope of the regulations' prohibitions.

### (2) *Due Process Deficiencies in the Commission Hearing?*

Whisenhunt also contends that the civil service commission hearing, which resulted in the Commission's approval of his demotion, was constitutionally inadequate to deprive him of his protected property interest against arbitrary demotion. In this regard, he chiefly objects to the Commission's refusal, in a series of increasingly limiting evidentiary rulings, to permit introduction of evidence concerning other instances of known, but unpunished, dating and perhaps cohabitation within the Department and evidence of a grudge the Chief of Police held against Whisenhunt because of several critical statements about police policies the plaintiff made to fellow officers.[11]

---

**10.** The defendants contend that Whisenhunt's supervisor "warned" the plaintiffs of the consequences of their actions when he forbade their sharing an apartment together. To the contrary, the plaintiffs received approval of their planned conduct and strictly observed the limitations set forth in the "warning."

**11.** At first, the Commission would not permit investigating officers to comment on the Chief's knowledge of other couples about

which he had done nothing, or to testify as to rumors or hearsay reports of other cohabitating officers. (Tr. 104, 106); the Commission limited testimony to personal observations of cohabitation (Tr.133). The Commission then ordered the Head of the Detective Division, who had been assigned to the surveillance of the plaintiffs and another couple, to confine his testimony to his knowledge of cohabitation or dating to this particular case. (Tr. 180–81.)

■ Due process requires that an individual be accorded notice and the opportunity to rebut the charges against him before incurring deprivation of a protected interest. *See, e.g., Mullane v. Hanover Trust Company,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). But, "the standards of due process are not wooden absolutes," *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970), for constitutional dictates provide only general minimum standards for state procedures, *see id.* at 858. The minimum federal constitutional requirement is only that the party deprived of a property right have " 'an *opportunity* [for a hearing] . . . granted at a meaningful time and in a meaningful manner,' for [a] hearing appropriate to the nature of the case," as well as "a meaningful opportunity to be heard." *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971) (citations omitted). Accordingly, in reviewing the state disciplinary hearing for its alleged federal due process deficiencies, our task is not to review every evidentiary ruling as if we were ourselves deciding the issues presented at the state hearing, but rather is limited to determining whether Whisenhunt's due process right to have the opportunity to rebut the charges against him was offended because he could not fully develop his defenses to the charged violations.

■ We must first note that the Commission's refusal to hear evidence regarding Whisenhunt's being disciplined in at least partial retaliation for his exercise of First Amendment rights, even if constituting a due process defect in the hearing, has been cured by the district court's de novo hearing on the issue of the First Amendment violation, *see Fluker v. Alabama State Board of Education,* 441 F.2d 201, 208 (5th Cir.1971),

and that we do not find clearly erroneous the district court's determination that Whisenhunt was not disciplined in retaliation for his speech (*see also* note 13 *infra*).

The evidentiary rulings, which give rise to the claim of due process deficiency, excluded testimony (other than first hand knowledge of the witness) of other instances of interdepartmental dating and cohabitation and of the Chief of Police's knowledge and toleration of similar activities. These rulings may indeed have hindered Whisenhunt's presentation of the defense of selective discipline with respect to conduct that was a common practice in the Department. Nevertheless, we are unable to say that the Commission's rulings were arbitrary—if indeed that issue is relevant to our determination—, for these rulings were based upon the Commission's reluctance to publicize the private lives of other police officers or to bring to light the alleged violations by other officers who had not been charged and who could not defend themselves.

Most relevantly, the plaintiff had the opportunity to present his essential defense that he was punished pursuant to a broad regulation for conduct approved by his supervisor. Moreover, the plaintiff was able to present evidence of his spotless performance evaluations and the absence of public complaints regarding cohabitation. All of these factors tended to prove that the plaintiff's objectionable conduct had not been prejudicial to good order in the Department and, even though it may have been a common occurrence, had not resulted in public criticism in violation of police regulations.

The state commission was thus fully aware of Whisenhunt's essential defenses, and it rejected them. In effect, Whisen-

---

The Commission also excluded as irrelevant testimony of the Chief concerning prior disciplinary actions taken to discipline officers for cohabitation or dating or instances of a subordinate sharing a residence with a superior officer; knowledge of other interforce relationships; or plans to instigate future investigations and discipline (Tr. 244, 254, 262, 286, 303, 322). Finally, the Commission would not permit Lieutenant Boydston, Whisenhunt's super-

visor, to testify as to the Chief's animosity to Whisenhunt prior to the end of 1977 (Tr.359), although Boydston testified that the Chief had made only negative comments regarding Whisenhunt. With respect to interforce dating, Boydston did testify that in many instances male police officers, in case of emergency callbacks to duty, left at work telephone numbers of women, perhaps fellow police officers, whom they were visiting. (Tr. 424.)

hunt asks this federal court to hold that the state commission committed error of constitutional magnitude, because the Commission sustained charges against him that his cohabiting conduct violated the regulations and was cause for discipline, despite the circumstance that he was the first officer against whom disciplinary charges so based had been filed and despite his superior's express or tacit permission for him to engage in such conduct.

█ We are nevertheless unable to agree that the Commission's rejection of his contentions was so arbitrary and unreasonable as to implicate a due process issue of a denial of a meaningful opportunity to be heard. We emphasize once again that Whisenhunt's conduct for which disciplined does not involve exercise of a constitutionally protected right (*see* Part III *infra*, rejecting the plaintiffs' privacy contentions), nor did the notice given by the regulation offend minimum federal due process requirements for the conduct at issue (*see* Part I.C., *supra*).

On state judicial review, the state tribunal may well conclude that Whisenhunt's conduct did not under the circumstances offend the catchall personnel regulations as charged, or that he was deprived under state law of the requisite opportunity to defend against the violations based on conduct unknown to be cause for discipline. Nevertheless, as a federal court reviewing the state procedures upon a claim of violation of federal right, we are unable to conclude that, by the state administrative hearing, Whisenhunt was deprived of the minimum federal due process rights to which he was entitled: an opportunity for a hearing appropriate to the nature of the case, with a meaningful opportunity to be heard. *Boddie v. Connecticut, supra,* 401 U.S. at 377–78, 91 S.Ct. at 786–87.

## II. Due Process—Constructive Discharge

The plaintiffs also contend that they were "constructively discharged" as a result of the due process violations of the defendants. We have some doubt that we need reach this issue, in view of our previous determinations that no federal due process rights were offended by the temporary suspensions, by the alleged lack of notice afforded by the vague catchall regulations upon which disciplinary actions against them were founded, or by the hearing procedures of the state civil service commission. Nevertheless, in deference to the plaintiffs' argument that an employee's discharge (as compared with a temporary suspension or, even, a demotion) implicates closer scrutiny as to due process violations, we briefly note why, in our view, no constructive discharge here occurred.

█ Generally speaking, a constructive discharge may be deemed to have resulted when the employer made conditions so intolerable that the employee reasonably felt compelled to resign.[12]

Here, the plaintiff Shawgo personally felt compelled to resign because of publicity resulting from the disciplinary action and the hearing, and the derogatory comments from co-workers and the public resulting therefrom. Sergeant Whisenhunt personally felt compelled to resign because of his assignment to the records department, isolated from the police officers whom he had previously supervised. In neither instance, we should note, were the actions by the Department impermissibly motivated by any desire to discipline or to retaliate for the employees' exercise of constitutionally protected rights. *Cf. Thompson v. Bass,* 616 F.2d 1259, 1267 (5th Cir.1980), *cert. denied,*

12. *See Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1077 (5th Cir.1981); *Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975). To find a constructive discharge, the court determines whether or not a reasonable person in the employee's position would have felt compelled to resign. *Pittman, supra, Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980). This analysis proceeds upon an examination of the conditions imposed, *not* upon an attempt to divine the employer's state of mind. *Bourque,* 617 F.2d at 65. Thus, the employee need *not* prove it was the employer's purpose to force the employee to resign, but rather only that the employer made conditions intolerable. *Pittman,* 644 F.2d at 1077, citing *Bourque, supra.*

449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1981) (infringement of employee's first amendment right implicates greater right to due process protections [13]).

■ We agree with the district court's conclusion that the plaintiffs were not constructively discharged,[14] despite its separate factual findings that the publicity attendant to the hearing requested by plaintiffs impaired plaintiffs' ability to perform effectively, that Whisenhunt was removed from contact with officers in the Department whom he had previously supervised, and that Shawgo encountered hostility from the public in the course of her duties as a patrolwoman. These conditions, insufferable as they may have been to the plaintiffs personally, were a result of their own reactions to the offensive publicity resulting from the open hearing and the Commission's decision to demote Whisenhunt, both factors inherent in the disciplinary proceedings necessitated in order to afford a disciplined employee hearing rights required by due process. Under these circumstances, the plaintiffs' resignations resulted from the embarrassment that may be consequent to any required disciplinary proceedings, not from any constitutionally (or otherwise) inhibited action by the employer that made intolerable the employees' continuance in governmental service.[15]

**13.** In the text, we have previously rejected the contention that they were disciplined because of their exercise of First Amendment rights. From our review of the record in the Commission hearing and the district court, we do not find that the district court was clearly erroneous in determining that Whisenhunt was not disciplined or discharged because of his criticism of the Department (Finding of Fact 21) and that Chief Spradlin's disciplinary actions "were not retaliatory measures made in an attempt to silence plaintiffs' criticisms" (Conclusion of Law 12).

**14.** Although it is unclear whether the constructive discharge issue is purely a question of fact subject to the clearly erroneous rule or a question of mixed law and fact, we, as did the court in *Junior v. Texaco, Inc.,* 688 F.2d 377, 379–80 (5th Cir.1982), conclude that, even under the greater mixed law-fact scope of review afforded to this court, the district court was not in error.

### III. *Right to Privacy*

■ We agree with the district court that, in the present circumstances, the plaintiffs' right to privacy has not been infringed by the scope of the regulation proscribing, as conduct prejudicial to good order, cohabitation of two police officers, or proscribing a superior officer from sharing an apartment with one of lower rank. The fourteenth amendment "protects substantive aspects of liberty"—including freedom of choice with respect to certain basic matters of procreation; marriage, and family life, *see, e.g., Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965)— "against unconstitutional restrictions by the state." *Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976). The first amendment additionally imbues the right to privacy to include protected forms of "association" for social as well as political reasons. *See Griswold v. Connecticut, supra,* 381 U.S. at 483, 85 S.Ct. at 1681.

The plaintiff police officers, who were found to have violated police and state rules of conduct by reason of their personal, off-duty association that led to their marriage, contend that the state may not regulate these private activities. This argument

**15.** The plaintiffs did not expressly argue that a hearing was necessary to protect a liberty interest in their professional reputation, damage to which would have affected their enjoyment of a property interest in continued employment or perhaps in obtaining other work in the area of law enforcement. In *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), the Supreme Court ruled that defamation by a state official alone did not deprive an individual of a liberty interest protected by due process, for to establish a liberty interest sufficient to implicate the safeguards of the Fourteenth Amendment, "the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir. 1977) (citing *Paul*).

fails to take into account the fact that the right to privacy is not unqualified, *Roe v. Wade, supra,* 410 U.S. at 154, 93 S.Ct. at 728, and that the state has "more interest in regulating the activities of its employees than the activities of the population at large," *Kelley v. Johnson, supra,* 425 U.S. at 245, 96 S.Ct. at 1444.

■ To sustain the attack on these police personnel regulations, the plaintiff officers must "demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property." *Id.* In this case we do not attempt to outline all the contours of a police department's scope of regulation of the off-duty activities of its employees, for we can ascertain a rational connection between the exigencies of Department discipline and forbidding members of a quasi-military unit, especially those different in rank, to share an apartment or to cohabit.

■ The plaintiffs also claim that their constitutional rights to privacy were violated by the investigatory surveillance of their off-duty association. No authority is cited in support of this proposition. It seems to us to be self-evident, from the jurisprudential expressions found in the first paragraphs of this part of the opinion, that police officers enjoy no constitutionally protected right to privacy against undercover and other investigations of their violations of department regulations or (although not in the present case) of law.

We thus find that no constitutional privacy rights of the plaintiffs were offended.

*Conclusion*

Because the plaintiffs were not denied the due process protections of notice of wrongdoing and a fair hearing before being deprived of a protected property interest and no constitutional right to privacy was implicated, we AFFIRM the judgment of the court below.

AFFIRMED.