# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20003

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2017

Lyle W. Cayce
Clerk

WARREN PIERRE CANADY,

       Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

       Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1124

Before KING, JOLLY, and PRADO, Circuit Judges.*

PER CURIAM:**

       Warren Canady appeals the district court's grant of summary judgment in favor of the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ") in a case seeking habeas corpus relief. Canady's habeas petition challenged his prison disciplinary conviction for possession of contraband, i.e., materials relating to the Uniform

---

\* Carolyn Dineen King, Circuit Judge, concurs in the judgment only.

\*\* Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20003

Commercial Code ("UCC"). Canady contends that he was denied due process because he did not receive prior notice that he could be punished for possessing such material. Canady also asks this Court to grant a preliminary injunction against the Director so that he may access UCC material. For the following reasons, we REVERSE the district court's grant of summary judgment and REMAND. We DENY Canady's petition for a preliminary injunction.

## I.

On February 19, 2014, law library staff at the Ellis One Plantation Unit, the prison where Canady was confined, received training regarding certain types of documents relating to the UCC that were considered contraband. Six days later, Frank Hoke, the coordinator of the Access to the Court Program, informed prison staff that UCC material would not be allowed into TDCJ facilities and told them that, if they found inmates with such material, they should confiscate the material and charge the inmates with possession of contraband, a disciplinary offense.[1]

On March 12, 2014, Officer Helen Chenevert, the prison law librarian, searched Canady's property and found material relating to the UCC. Two days later, Canady was notified that he had been charged with a disciplinary offense for "possess[ing] contraband, namely, UCC (Uniform Commercial Code) material, which is an item that is not allowed or assigned to an offender, and

---

[1] At the time, the TDCJ Disciplinary Rules and Procedures defined "contraband" as:

  a. Any item not allowed when the offender arrived at the TDCJ, not given or assigned to an offender by the TDCJ, and not bought by an offender for their use from the commissary; . . . .

  c. Any item which, in the judgment of TDCJ staff, unreasonably hinders the safe and effective operation of the unit; . . . .

  e. Any item received or sent through the mail that is not approved in accordance with the TDCJ or facility correspondence rules; and

  f. Anything an offender is not supposed to have, including, but not limited to: . . . Books, magazines, or newspapers that are not approved for an offender to have . . . .

## No. 15-20003

not bought by the offender for his use from the commissary." On March 19, 2014, prison officials conducted a disciplinary hearing in Canady's case, which Canady elected not to attend. The hearing officer found Canady guilty of the charged offense and punished him by, among other things, revoking twenty-nine days of good-time credits. Canady appealed this decision through the prison system, but prison officials upheld the conviction.

Canady subsequently filed a *pro se* habeas petition in the district court,[2] contending that he was denied due process by being deprived of good-time credits without having received prior notice that possessing UCC material was prohibited. *See Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) ("[W]hen a state inmate enjoys a constitutional expectancy to an early release from prison based on the accumulation of good-time credits, he has a protected liberty interest and is entitled to due process before he may be deprived of such credits."). The Director countered with a motion for summary judgment. The district court granted the Director's summary judgment motion and dismissed Canady's case, holding that the TDCJ's disciplinary rules provided adequate notice that the materials in Canady's possession constituted contraband.

Canady timely appealed. On November 17, 2015, this Court granted a COA on Canady's claim that he did not receive prior notice that he could be punished for possessing UCC material. In October 2016, Canady filed a petition for a preliminary injunction in this Court, asking that we require prison officials to allow him to access UCC material. We must decide: (1) whether Canady is entitled to a preliminary injunction; (2) whether Canady

---

[2] A habeas petition is the proper method for seeking to have good-time credits reinstated. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

No. 15-20003

has abandoned his habeas claim; and (3) whether the district court erred in granting summary judgment.

## II.

"As we begin our review, we are mindful that 'we liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than parties represented by counsel.'" *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) (quoting *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995)).

## A.

We begin by addressing Canady's petition for a preliminary injunction. Canady contends that prison officials violated his First Amendment rights by seizing the UCC material from his possession, so he asks this Court to require prison officials to allow him to access UCC material. But Canady never raised this claim before the district court. We therefore decline to consider his petition. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316–17 (5th Cir. 2000) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered.").

## B.

Next, we consider whether Canady has abandoned his habeas claim on appeal. The Director contends that this Court lacks jurisdiction or, alternatively, Canady has abandoned his habeas claim because: Canady has not requested habeas relief in his appellate brief, which states that he "seeks the necessary tort relief through 42 U.S.C. § 1983 in the deprivation of his liberty and property" and requests monetary damages; and Canady did not raise a § 1983 claim in the district court. We disagree.

The mere fact that a *pro se* appellant incorrectly labels his claim and misidentifies the available relief does not mean that he has abandoned his claim on appeal. As we explained in *Rosin v. Thaler*, "[t]he label attached to a

prisoner's pro se pleading is not controlling; rather, courts must look to the content of the pleading."[3]  417 F. App'x 432, 434 (5th Cir. 2011) (per curiam). Consequently, in *Rosin*, when a *pro se* prisoner sought damages and injunctive relief before a district court "in a submission styled as a 28 U.S.C. § 2254 application" but, on appeal, argued that he had not sought relief under § 2254 and tried "to bring claims for civil rights violations under 42 U.S.C. § 1983," we construed his request "as both a request for a COA for any § 2254 claims and an appeal of the dismissal of any civil rights claims." *Id.* at 433.

Canady's case is similar to *Rosin*.  Canady filed this lawsuit in the district court as a petition for a writ of habeas corpus under § 2254, and the district court properly construed his claim as such.  Canady's notice of appeal and motion for a COA reiterated his intention to appeal "the loss of good time credit."  And although Canady's merits brief states that he seeks monetary damages under § 1983, its argument focuses on whether Canady was disciplined (and therefore lost good-time credits) without receiving fair warning that the materials he possessed were contraband—an argument that supports the claim on which the COA was granted and appears to be aimed at challenging the district court's denial of habeas relief.

Accordingly, we retain jurisdiction over this case and hold that Canady has not abandoned his habeas claim on appeal.  To the extent, however, that Canady seeks monetary damages under § 1983, we decline to consider those claims for relief because they were not raised before the district court. *Stewart Glass*, 200 F.3d at 316–17.

---

[3] In *Herring v. Cotten*, this Court held that an appellant had "not appeal[ed] the dismissal of what the district court construed as his habeas claims" because he only sought monetary damages on appeal and did not "allege that he [was] entitled to habeas relief from being held for five weeks without bond."  51 F.3d 1042 (5th Cir. 1995) (unpublished table decision).  But *Herring* is not necessarily analogous to the instant appeal because it is unclear whether the *Herring* appellant was proceeding *pro se*.

No. 15-20003

C.

We now turn to the merits of Canady's habeas claim. "We review a summary judgment *de novo,* 'using the same standard as that employed by the district court under Rule 56.'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000)). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013). "Because this case arises in a summary judgment posture, we view the facts in the light most favorable to [Canady], the nonmoving party." *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1769 (2015). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Due Process Clause requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Thus, we have "expressly held that it is a violation of due process to punish inmates for acts which they could not have known were prohibited." *Reeves v. Pettcox*, 19 F.3d 1060, 1061 (5th Cir. 1994) (per curiam). "An inmate is entitled to prior notice, or 'fair warning,' of proscribed conduct before a severe sanction," such as deprivation of good-time credits, may be imposed. *Id.* (quoting *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984)).

The record seems clear that no specific notice of the prohibition on UCC material was provided to inmates, including Canady, before Canady was charged with possession of contraband. Canady contends, further, that he

6

could not have known the UCC material was contraband given that: there is no evidence that any inmate before him had been punished for possessing UCC material; and the material was approved through the prison mail system and available in the prison law library. The Director counters that the definition of contraband in the TDCJ's disciplinary rules provided Canady with adequate notice because the rules only allow inmates to possess approved materials and prison staff never explicitly authorized inmates to possess UCC material. The Director also notes that the material in Canady's possession was not simply UCC forms or excerpts but included, among other things, "articles instructing individuals on how to circumvent the use of currency or otherwise not pay for anything, and how to get the federal government to 'pay back' the 'national debt' owed to oneself." Because prison staff determined that this type of material concerned "either plans for activities in violation of institutional rules, or plans for future criminal activity," the Director argues that the UCC material clearly fell within the disciplinary rules' prohibition on items that "unreasonably hinder[] the safe and effective operation of the unit."

Canady presented evidence that the UCC material in his possession had been previously approved or made available by prison staff. Canady has consistently stated that he obtained the UCC material "via general correspondence *approved* through the prison mail system" and "from law books and legal material, in the law library and made accessible for legal research and/or general use." And he has provided supporting affidavits from three other inmates stating that Officer Chenevert, the "law library supervisor, provided . . . uniform access to legal books, case law and/or reference material pertaining to the Uniform Commercial Code." The Director does not dispute this evidence in either its motion for summary judgment or its brief before this Court. The only contrary evidence in the record is Officer Chenevert's testimony that UCC information was not accessible through the law library.

No. 15-20003

If they had previously approved or made available UCC material, prison officials needed to notify inmates that the material was no longer permitted *before* taking disciplinary action against them and give inmates an opportunity to dispose of the contraband. *See Reeves*, 19 F.3d at 1061–62.  Nothing in the record suggests that prison officials did so.  Officer Chenevert testified that Canady was notified that the materials were contraband "at the time of discovery."  And as we have noted, the Director has not pointed to any evidence that the policy prohibiting possession of UCC material was otherwise communicated to inmates.

The Director contends that Canady was on notice that his UCC material was contraband because the material carried its own warning of wrongdoing.  But nothing in the record indicates that any inmate before Canady was punished for possessing UCC material or that it was clearly insubordination to possess such material.  *See Adams*, 729 F.2d at 369.  There is therefore a factual dispute, at least, as to whether the material was of such a nature that it "carr[ied] with it its own warning of wrongdoing" such that inmates would have known that "serious disciplinary sanctions would be imposed for their conduct," especially if the material had previously been approved or made available by prison personnel.  *See id.* (quoting *Shawgo v. Spradlin*, 701 F.2d 470, 478 (5th Cir. 1983)).  Thus, we hold that the district court erred in granting the Director summary judgment.

III.

For the foregoing reasons, Canady's petition for a preliminary injunction is DENIED.  Additionally, we REVERSE the district court's grant of summary judgment and REMAND for a factual determination of whether, under these circumstances, Canady was denied his constitutional due process right to fair warning that possessing UCC material violated prison rules. Finally, Canady's motion for a fair hearing is DENIED as moot.